UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :    File No. 1:11-cr–10-jgm |
| | : |
| MARK J. MARSDEN | : |
| | : |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS
(Doc. 19)

I.    Introduction

Defendant Mark J. Marsden (Defendant or Marsden) is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) Marsden moves to suppress physical evidence and statements. He argues his Fourth, Fifth, and Fourteenth Amendment constitutional rights were violated. Thus, the physical evidence and inculpatory statements must be suppressed. (Doc. 19.) The government opposes the motion. (Doc. 22.) Defendant did not request a hearing and the government asserts a hearing is unnecessary because the entire encounter was recorded. See Doc. 22 at 7. Accordingly, the Court resolves the motion on the parties' papers.

For the reasons stated below, Defendant's motion is denied.

II.    Background[1]

In the early morning hours of February 10, 2010, several burglaries occurred in the Lyndonville, Vermont area, including at the Agway, Marty's First Stop, and The Bagel Depot. Surveillance video from Agway depicted two males and a blue truck with distinctive markings. Vermont State Police Sergeant Sean Selby (Officer Selby) recognized the truck as belonging to Defendant because he had recently been arrested for other burglaries in the area. Officer Selby went

---

[1] The facts are gleaned from the parties' papers and attached exhibits. See Docs. 19, 22.

1

to Defendant's house, where he lives with his mother, Darlene Marsden, and observed the blue truck parked across the street. Officer Selby spoke with both Defendant and his mother, and Darlene Marsden consented to a search of her home. See Doc. 22-1. A recording of the encounter was submitted to the Court. (Doc. 22 Ex. B.)

Defendant eventually admitted to his involvement in the burglaries and provided Officer Selby with information about the stolen items, including cash registers, cigarettes and chewing tobacco, and salt. He also assented to a search of his bedroom, and when officers approached his room, they observed guns in plain view through the open door.

During the encounter with Defendant, Officer Selby specifically stated, inter alia: "I can't guarantee you anything"; "I cannot guarantee you you are not going to be put in jail"; "when you cooperate with me, I will do what I can for you"; "it's not up to me"; and "all I can give you is my word that I will do what I can do." (Doc. 22 Ex. B.) After searching Defendant's room, Officer Selby stated discovery of the guns was "minor," but if "ATF gets involved with those guns, then it becomes federal. Then you're looking at a whole other can of worms." Id. Officer Selby told Defendant he would make the prosecutor and judge aware of his cooperation, which would be to his benefit. Id.

Following the search, Defendant was arrested for the burglaries. At the police station, he signed a Miranda waiver form (Doc. 22-3), and made further statements. The government asserts "[i]t does not appear as though Marsden made any further statements about possessing the firearms" while at the station. (Doc. 22 at 2-3.) Defendant pled guilty to the burglary charges, receiving a three to eight year sentence suspended except for eighteen months.

III.     Discussion

Defendant argues both the consent to search his room as well as his statements to law enforcement officers were involuntarily made as the result of improper promises of leniency. (Doc. 19 at 4.)  The government asserts law enforcement officers did not need Defendant's consent to search his room because they had valid consent from his mother, a person with common authority over the house (Doc. 22 at 4), and his statements were voluntary.  Id. at 5.

Warrantless searches are "per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967).  An exception is searches for which an individual with "common authority" over the area to be searched voluntarily consents.  Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).  If a co-occupant expressly objects to the consent, any further search would be unreasonable as to the co-occupant.  Georgia v. Randolph, 547 U.S. 103, 122-23 (2006).  Law enforcement officers, however, "are under no affirmative obligation to request consent from a potentially objecting co-occupant before acting on permission they received from another occupant."  United States v. Lopez, 547 F.3d 397, 400 (2d Cir. 2008) (citing Randolph, 547 U.S. at 122).  Instead, the onus is on the occupant to object to the search.  Id.

Applying these standards, the Court finds the search of Defendant's house, including his bedroom, was reasonable.  Darlene Marsden, Defendant's mother, consented to the search of the house and signed a consent form.  (Doc. 22-1.)  Defendant, though present, did not object to the search and showed officers his bedroom, where they could see guns in plain sight.  Accordingly, the warrantless search of the house and bedroom was reasonable and the physical evidence will not be suppressed.

Even if Defendant's independent consent to search his bedroom was required, see Rodriguez, 497 U.S. at 181 ("'common authority' rests on mutual use of the property by persons generally having joint access or control for most purposes") (internal quotation and citation omitted), the search was reasonable. Consent is voluntary if "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986). Whether an individual has validly consented is determined by the totality of the circumstances under a preponderance of the evidence standard. United States v. Isiofia, 370 F.3d 226, 230-31 (2d Cir. 2004).

Defendant argues his statements and consent were involuntary because they were coerced through promises of leniency and minimization of criminal implications. (Doc. 19 at 4, 16.) "In assessing the totality of the circumstances, vague promises of leniency for cooperation are just one factor to be weighed in the overall calculus and generally will not, without more, warrant a finding of coercion." United States v. Gaines, 295 F.3d 293, 299 (2d Cir. 2002) (citation omitted). Defendant relies on United States v. Leach for the proposition that an unequivocal promise may result in a finding of involuntariness. See Doc. 19 at 3 (citing United States v. Leach, No. 3:08-CR-116-K, 2009 WL 2448273 (N.D. Tex. Aug. 10, 2009)).

This case, however, is distinguishable from Leach, where the defendant was unequivocally promised he would not be charged. Leach, 2009 WL 2448273, at * 2. Here, the officers made no such promise. Defendant characterizes the statements made by officers as "implying leniency," and stated the officers "impliedly promised that Defendant's statements would be beneficial to him" (Doc. 19 at 5, 8.) Officer Selby, however, specifically stated "I can't guarantee you anything," and "all I can give you is my word that I will do what I can do." (Doc. 22 Ex. B.) After searching Defendant's room, though Officer Selby initially characterized the discovery of the guns as "minor,"

he later clarified if "ATF gets involved with those guns, then it becomes federal. Then you're looking at a whole other can of worms." Id. Officer Selby told Defendant he would make the prosecutor and judge aware of his cooperation. Id. Officer Selby did not make any unfulfillable promises or misrepresentations sufficient to render Defendant's consent or any statements involuntary.[2] Accordingly, considering the totality of the circumstances, the discussion of leniency alone was not so coercive as to overbear Defendant's will. See Colorado v. Connelly, 479 U.S. 157, 167 (1986) (holding a statement is involuntary if coercive government activity overbears a Defendant's will). The Court finds, by a preponderance of the evidence, his consent and statements were voluntary.

IV.     Conclusion

For the above reasons, the Defendant's Motion to Suppress Physical Evidence and Statements (Doc. 19) is DENIED.

This case will be placed on the October 3, 2011 trial calendar.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 12th day of September, 2011.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge

---

[2] The same totality of the circumstances standard for assessing voluntariness applies to both consent and confessions or statements. See Gaines, 295 F.3d at 299. Though Defendant states "all statements [] were impermissibly obtained," (Doc. 19 at 17), he does not specifically argue his statements at the police station should be suppressed. In any case, the signed Miranda waiver form reassures the Court those statements were also voluntary. See Doc. 22-3.